Sanjay Narayan (CA Bar No. 183227)
Nathaniel Shoaff (CA Bar No. 256641)
Sierra Club Environmental Law Program
2101 Webster St., Ste. 1300
Oakland, CA 94612
sanjay.narayan@sierraclub.org
nathaniel.shoaff@sierraclub.org
phone (415) 977-5769
fax (415) 208-3140

Counsel for Plaintiff Sierra Club

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| **SIERRA CLUB,** | |
| **Plaintiff,** | **Case No.** |
| **v.** | **COMPLAINT** |
| **UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,** | **(Freedom of Information Act Case)** |
| **Defendant.** | |

## SUMMARY

1.   Sierra Club seeks relief for violations of the Freedom of Information Act, 5 U.S.C. § 552, by the U.S. Environmental Protection Agency ("EPA," or the "Agency"), in failing to adequately respond to requests for agency records submitted by the Sierra Club on October 31, 2017. *See* 5 U.S.C. § 552(a)(6)(A) (requiring responsive determination within 20 working days).

2.   The requested records concern the role, and communications, of Michael Dourson and Susan Bodine. Mr. Dourson and Ms. Bodine were both nominated to positions within the Agency. According to published news reports, Mr. Dourson and Ms. Bodine participated in EPA decision-making within the offices to which they had been nominated, prior to their confirmation by the United States Senate. Andrew Restuccia & Nahal Toosi, "Trump Nominees Show Up for Work Without Waiting for Senate Approval," Politico (October 20, 2017) (available at https://www.politico.com/story/2017/10/20/trump-nominees-working-senate-approval-243972).

3.   Ms. Bodine was confirmed in December, 2017. Mr. Dourson withdrew, following the release of documents indicating that he had corresponded with "chemical industry officials" while under consideration for head of EPA's chemical safety division.  Sheila Kaplan & Eric Lipton, "Trump's E.P.A. Chemical Safety Nominee Withdraws," N.Y. Times (Dec. 13, 2017) (available at https://www.nytimes.com/2017/12/13/science/epa-chemical-safety-trump.html) at A20.

4.   On October 31, 2017, Sierra Club submitted two requests, under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA," or the "Act"), for records describing Mr. Dourson's and Ms. Bodine's work at the Agency, and for certain of Mr. Dourson's and Ms. Bodine's communications with the Agency, or on behalf of the Agency, while they were awaiting confirmation by the Senate.

5.   EPA has not provided the Sierra Club with a responsive determination, pursuant to 5 U.S.C § 552(a)(6)(A), nor has it provided any responsive documents or a date by which it intends to produce such documents. That failure violates the Act, which requires an agency to make a responsive determination "within 20 days (excepting Saturdays, Sundays, and legal public holidays)after the receipt" of a request. *Id.*

**SUBJECT MATTER JURISDICTION AND VENUE**

6.   This Court has jurisdiction over this case under 5 U.S.C. § 552(a)(4)(B), and 28 U.S.C. § 1331.

7.   Sierra Club has its principal place of business in Oakland, California; this Court is, consequently, the proper venue for this action. 5 U.S.C. § 552(a)(4)(B) (providing for venue "in the district in which the complainant resides, or has [its] principal place of business, or in which the agency records are situated, or in the District of Columbia").

**INTRADISTRICT ASSIGMENT**

8.   This case arises, within the meaning of 5 U.S.C. § 552, in Alameda County. For that reason, it is properly assigned to the Oakland Division. N.D. Cal. L.R. 3-2(c)-(d).

**PARTIES**

9.   The EPA is a federal agency, subject to FOIA. 5 U.S.C. § 552 (f)(1).

10. The Sierra Club is a nonprofit, membership organization, with more than 820,000 members nation-wide. The Sierra Club seeks to inform and educate the public as to, *inter alia,* the activities of the United States Environmental Protection Agency, and other federal agencies entrusted with the administration of public-health and environmental laws, with the aim of improving public understanding of, and support for, public-health and environmental protection. The Sierra Club has a long history of advocacy, and public education, as to the dangers of toxic chemicals, and the importance of federal enforcement of the Clean Air Act, Clean Water Act, and other bedrock environmental statutes.

11. To those ends, Sierra Club routinely seeks information, made available by FOIA, from EPA and other federal agencies, and uses that information to further educate and inform its

members, and the public, as to the activities of those agencies and political appointees to those agencies.

## LEGAL FRAMEWORK: THE FREEDOM OF INFORMATION ACT

12. The Freedom of Information Act seeks to "open agency action to the light of public scrutiny," by "requiring agencies to 'adhere to 'a general philosophy of full agency disclosure,''" *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989) (citations omitted). The Act's requirements are meant to "ensure an informed citizenry, vital to functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Nat'l Labor Relations Bd. v. Robbins Tire & Rubber,* 437 U.S. 214, 242 (1978).

13. To achieve that result, FOIA requires every federal agency to, *inter alia*, "make reasonable efforts to search for," and "make reasonable efforts to search for," agency records that are requested by any person, including electronic records. 5 U.S.C. §§ 552(a)(3)(A)-(C) & (f)(2).

14. An agency must "determine within 20 days (excepting Saturdays, Sundays, and legal holidays" after the receipt of any such request "whether to comply," and "immediately notify the person making such request" of "such determination," and the person's attendant rights under FOIA. 5 U.S.C. § 552(a)(6)(A). That initial determination may be delayed by 10 working days, but only if the agency demonstrates the existence of specified "unusual circumstances." 5 U.S.C. § 552(a)(6)(B).

15. The Act enumerates limited exemptions, which an agency may invoke to withhold records. *See, e.g.,* 5 U.S.C. §§ 552(a)(8) & (b)-(c). Any agency making such an invocation bears the burden of demonstrating that the exemption applies, for each withheld record. *Schiffer v. F.B.I.,* 78 F.3d 1405, 1409 (9th Cir. 1996).

16. The Act and EPA's implementing regulations provide an administrative review process, by which a person requesting records may appeal any adverse determination by an agency as to that person's request. 5 U.S.C. § 552(a)(6)(A)(III). Where "the agency fails to comply with the applicable time limit[s]," 5 U.S.C. § 552(a)(6)(C)(i), however, the requester is deemed to have exhausted those administrative remedies. *See Citizens for Responsibility & Ethics in Washington v. Federal Election Com'n,* 711 F.3d 180, 186 (D.C. Cir. 2013).

17. District Courts may "enjoin the agency from withholding agency records" and may "order the production of any agency records improperly withheld." 5 U.S.C. § 552(a)(4)(B).

18. A court may "assess … reasonable attorney fees and other litigation costs reasonably incurred in any case" under FOIA "in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i).

## GENERAL FACTUAL BACKGROUND

19. On October 31, 2017, Sierra Club submitted two records requests to EPA, pursuant to FOIA.

20. The first of those requests (attached hereto as Exhibit A), sought records "establishing, creating, memorializing, or otherwise describing any employment, contractor, or consulting" relationship between EPA and Mr. Dourson or Ms. Bodine, while Mr. Dourson and Ms. Bodine were awaiting Senate confirmation. EPA assigned that request the tracking number EPA-HQ-2018-001171.

21. Sierra Club's second request (attached as Exhibit B) sought communications from Mr. Dourson and Ms. Bodine, while they were awaiting confirmation, and communications from certain EPA offices to Mr. Dourson and Ms. Bodine, over that same period. EPA designated that request no. EPA-HQ-2018-001172.

22. On November 15, 2017, EPA notified Sierra Club that it had granted Sierra Club's request to waive any fees associated with Sierra Club's first request (EPA-HQ-2018-001171). On January 8, 2017, EPA notified Sierra Club that Sierra Club's second request (EPA-HW-2018-00172) "does not reach the minimum billable amount," so that there would be no charges associated with responding to that request. EPA denied Sierra Club's request for expedited processing of both requests.

23.  EPA has not made any other determinations, nor provided any further response, with regard to either of Sierra Club's requests.

24. EPA's failure to comply with FOIA has injured Sierra Club and its members, by failing to respond and failing to provide Sierra Club with the communications and information it has requested, and to which it is legally entitled.

## CLAIM FOR RELIEF

25. The previous paragraphs are re-alleged and incorporated by reference.

26. EPA has failed to make a final determination with regard to Sierra Club's requests for records, to produce responsive materials, or to identify any grounds to withhold the responsive records.

27. The Agency has thereby violated FOIA's requirements, including (without limitation): the Act's requirement that an agency make a timely responsive determination, 5. U.S.C. § 552(a)(6); and FOIA's requirement that an agency timely complete a search for responsive records, and promptly make such records available, 5 U.S.C. § 552(a)(3).

28. The Sierra Club has exhausted its administrative remedies, and is otherwise entitled to obtain the requested records.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests that this Court:

(1) Declare that EPA has violated FOIA, by its failure to make a final determination on Sierra Club's request, and its failure to make the requested records available by the statutory deadline;

(2) Order that the EPA make available to Sierra Club the records Sierra Club has requested, promptly and at no cost;

(3) Order EPA to produce an index identifying any documents or parts thereof that it withholds and the basis of each withholding, in the event that EPA determines records or parts of records are exempt from disclosure;

(4) Retain jurisdiction over this case to rule on any assertions by EPA that the any responsive records held by the Agency are, in whole or in part, exempt from disclosure;

(5) Award Sierra Club's litigation costs and attorneys' fees in this action;

(6) Order such other relief as the Court may deem just and proper.


Dated: May 2, 2018

Respectfully submitted,

_/s/ Sanjay Narayan_
Sanjay Narayan (CA Bar No. 183227)
Nathaniel Shoaff (CA Bar No. 256641)
Sierra Club Environmental Law Program
2101 Webster St., Ste. 1300
Oakland, CA 94612
sanjay.narayan@sierraclub.org
nathaniel.shoaff@sierraclub.org
phone (415) 977-5769
fax (415) 208-3140

Counsel for Plaintiff Sierra Club

**COMPLAINT**

# Exhibit A



October 31, 2017

_Submitted via FOIA Online_

National Freedom of Information Officer
Environmental Protection Agency
1200 Pennsylvania Avenue, NW (2822T)
Washington, DC 20460

Dear FOIA Officer:

This is a request for information on behalf of Sierra Club, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the U.S. Environmental Protection Agency's ("EPA") implementing regulations, 40 C.F.R. §§2.100-2.406. Sierra Club also requests a fee waiver for this request under 5 U.S.C. § 552(a)(4)(A)(iii) and 40 C.F.R. § 2.107(l)(2).

_A. Records Requested_

Ms. Susan Parker Bodine has been nominated, but not confirmed, to be an Assistant Administrator at EPA. Mr. Michael Dourson has also been nominated, but not confirmed, to be an Assistant Administrator at EPA. Sierra Club requests copies of the following agency records:

1. All records establishing, creating, memorializing, or otherwise describing any employment, contractor, or consulting relationship between EPA and Ms. Susan Parker Bodine, prior to Ms. Bodine's formal confirmation (if any) by the United States Senate;

2. All records establishing, creating, memorializing, or otherwise describing any employment, contractor, or consulting relationship between EPA and Mr. Michael Dourson, prior to Mr. Dourson's formal confirmation (if any) by the United States Senate;

This request only seeks documents generated, sent, or received after January 15, 2017.

For purposes of this request, the term "records" means information of any kind, including, but not limited to, documents (handwritten, typed, electronic or otherwise produced, reproduced, or stored), letters, e-mails, facsimiles, memoranda, correspondence, notes, databases, drawings, graphs, charts, photographs, minutes of meetings, electronic and magnetic recordings of meetings, and any other compilation of data from which information can be obtained. As used herein, "and" and "or" shall be construed either conjunctively or disjunctively as required by the context to bring within the scope of these requests any information which might be deemed outside their scope by any other construction.

Further, for purposes of this request, the term "records" includes any personal email messages, telephone voice mails or text messages, and internet "chat" or social media messages, to the full extent that any such messages fall within the definition of "agency records" subject to FOIA, 5 U.S.C. § 552, and including any attachments. Per EPA records management policy, electronic messages such as text messages are agency records, which must be preserved and made accessible under the Freedom of Information Act. As such, a satisfactory search for responsive records includes a search for records created by the individuals listed above using any of the following services: Google Chat, Skype for Business, IBM Sametime, Novell Groupwise Messenger, Facebook Messaging, iMessage; Short Message Service and Multimedia Messaging Service on devices, such as Blackberry, Windows, Apple or Android devices; Google Voice, Twitter Direct Message, Slack, Snapchat, WhatsApp, Pigeon, Yammer, Jive, or, other internal collaboration networks.

It is my understanding that in previous administrations Agency employees referred to principals by their initials, acronyms, nicknames, pseudonyms, or aliases. For example, President Clinton was sometimes referred to as "WJC" and President Barack Obama was referred to as "BO." In 2013, it was reported that former EPA Administrator Lisa Jackson used the alias "Richard Windsor" to conduct official agency business. Therefore, a thorough search for records responsive to this request includes searching for records containing the acronyms, nicknames, pseudonyms, or aliases used to identify Ms. Bodine or Mr. Dourson.

*B. Claims of Exemption from Disclosure*

If EPA regards any documents as exempt from required disclosure under the Freedom of Information Act, please identify each allegedly exempt record in writing, provide a brief description of that record, and explain the agency's justification for withholding it. This explanation should take the form of a *Vaughn* index, as described in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), and other related

cases. If a document contains both exempt and non-exempt information, please provide those portions of the document that are not exempted from disclosure.

## C. Request for Expedited Processing

We request that the EPA give this request the benefit of expedited processing. Sierra Club is primarily engaged in disseminating information and educating the public on policy issues of general interest, and the records will be publicly distributed upon their release. This request is urgently needed to inform the public of actual or alleged government activity; Ms. Bodine's and Mr. Dourson's appointments are currently under consideration in the United States' Senate, and the nature of their activities prior to their appointment are of critical, and immediate, public interest. *See, e.g,*. Andrew Restuccia and Nahal Toosi, "Trump Nominees Show Up for Work Without Waiting for Senate Approval," Politico, October 20, 2017 (available at http://www.politico.com/story/2017/10/20/trump-nominees-working-senate-approval-243972).

## D. Request for Waiver of Fees

Pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 40 C.F.R. § 2.107(l)(2), Sierra Club requests that EPA waive all fees associated with responding to this request. Sierra Club seeks this information in the public interest and will not benefit commercially from this request. FOIA provides that fees shall be waived "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii); 40 C.F.R. § 2.107(l)(2). This request meets both prongs of that standard, as set forth below.

1. *The Request Will Contribute Significantly to Public Understanding of the Department's Operations and Activities.*

EPA's regulations enumerate four factors by which to determine whether a request will contribute significantly to public understanding, so as to require a waiver of fees under FOIA:

(1) The subject of the request: Whether the subject of the requested records concerns "the operations or activities of the government";

(2) The informative value of the information to be disclosed: Whether the disclosure is "likely to contribute 'significantly'" to public understanding of government operations or activities;

2101 Webster Street, Ste. 1300 Oakland, CA  94612   TEL: (415) 977-5709

(3) The contribution to an understanding of the subject by the general public likely to result from disclosure: Whether the disclosure is likely to contribute to public understanding of government operations or activities.

(4) The significance of the contribution to public understanding: Whether the disclosure is likely to contribute "significantly" to public understanding of government operations or activities.

40 C.F.R. § 2.107(l)(2)(i)-(iv). As set forth below, each of those factors indicates that this request qualifies for a waiver of fees under FOIA.

(i)    *The request concerns identifiable operations or activities of the government.*

Sierra Club seeks information related to EPA's operations and activities—specifically, the role of pending nominees at the Agency. It addresses a specific topic, and seeks specific subject matter: employment-related records for Ms. Bodine and Mr. Dourson. The request is, moreover, directed towards a specific government action—the role of particular individuals at the agency—over a defined time period. 40 C.F.R. § 2.107(l)(2)(i) (request must "concern identifiable operations or activities of the Federal government").

(ii)    *The disclosure is "likely to contribute" to an understanding of government operations and activities.*

The requested records are "meaningfully informative about government operations," and thus likely to contribute to an understanding of government operations and activities. 40 C.F.R. § 2.107(l)(2)(i). The role of appointees at federal agencies, prior to their confirmation by the Senate, is a matter of long-standing, and critical, public interest. As the Senate has noted, under the Constitution "[t]he President may choose whom he wants to nominate, but the Senate has the power to advise and consent before those nominees may assume office." S. Rep. 105-250 (July 15, 1998). Concern over the role of non-confirmed appointees dates to the founding of the nation; "the 'manipulation of official appointments' had long been one of the American revolutionary generation's greatest griveances." *Id.* (quoting *Freytag v. Commissioner of Internal Revenue,* 501 U.S. 868, 883 (1991) (citations omitted in original)). And such concern has persisted to the present day; in 1998, Congress amended the Vacancies Act, out of a direct concern that appointees may exercise authority prior to their confirmation, thereby eviscerating the Senate's constitutional role. *Id. See SW General, Inc. v. N.L.R.B.,* 796 F.3d 67, 71-72 (D.C. Cir. 2015). The role of Ms. Bodine and Mr. Dourson—unconfirmed nominees—at the agency is critical to public understanding of the Administration's understanding of the relationship between the President and the Senate in appointing agency officers. In addition, significant concerns have been raised during Mr. Dourson's

confirmation hearings regarding potential conflicts of interest. Sheila Kaplan & Eric Lipton, "Chemical Industry Ally Faces Critics in Bid for Top E.P.A. Post, N.Y. Times (Sept. 17, 2017) at A16 (noting statement by Senator Carper that "[t]his is the first time anyone with such clear and extensive ties to the chemical industry has been picked to regulate that industry," and that Mr. Dourson has only described an intent to avoid matters on which he has represented industry after confirmation). Those concerns further emphasize the educational and informative value of the requested records.

> (iii)   *The information will contribute to the understanding of a reasonably broad audience of persons interested in the subject.*

   This information will contribute to the understanding of a reasonably broad audience of persons interested in the subject. Sierra Club has both "expertise in the subject area," as well as the "ability and intention to effectively convey" the requested information to the public. 40 C.F.R. § 2.107(l)(2)(iii). Sierra Club is the nation's oldest and largest grassroots environmental organization. As such, Sierra Club has long history of providing the public with information as to the role and qualifications of EPA nominees.   In addition, Sierra Club has the ability and intention to convey the information sought by this request to interested members of the public. Sierra Club can publicize information received from this request in monthly electronic newsletters, through social media, and email action alerts, which together reach hundreds of thousands of members, supporters, and subscribers. And Sierra Club reaches a very broad audience. The organization has more than 3 million members and supporters nationwide, who are reached via mail, our website, emails and listservs, and public meetings and events. The Sierra Club website, which hosts a number of blogs as well as online content of the Sierra Magazine, receives more than 26 million unique visits and 30 million page views annually. Sierra Magazine publishes on a range of environmental issues, including climate and energy. For instance, Sierra recently published a story urging oil refineries and other chemical companies to prepare for severe floods related to climate change. Heather Smith, *Planning for the 100-Year Flood Applies to You Too, Chemical Company*, Sierra (Aug. 31, 2017), http://www.sierraclub.org/sierra/planning-for-100-year-flood-applies-you-too-chemical-company. In another example, Sierra reported on coal ash dumps and the health hazards of coal ash based in part on information gathered under FOIA. Paul Rauber, *Solving the Climate Puzzle: One Piece at a Time*, Sierra (Nov./Dec. 2009), http://vault.sierraclub.org/sierra/200911/climate.aspx. In addition, Sierra has been awarded multiple Maggie awards from the western Publications Association, and has been recognized repeatedly for excellence in design by *Folio* magazine's Ozzie Awards.[1]  Sierra Club's

---

[1] With the award-winning Sierra magazine and our extensive use of blogs to communicate with the public, Sierra Club would at a minimum be eligible for a fee waiver as a media requestor. 5 U.S.C. § 552(a)(4)(A)(ii); 40 C.F.R. § 2.107(c)(1)(iii); *see also* 40 C.F.R. § 2.107(b)(6) (defining "[r]epresentative of the news media"). A representative of the news media is "any person or entity that gathers information

communications staff can also disseminate newsworthy information obtained from this request to the media. *See, e.g.,* Rene Marsh & Gregory Wallace, "More than 350 Jobs at EPA Unfulfilled During Trump Hiring Freeze, April 13, 2017 (available at http://www.cnn.com/2017/04/13/politics/epa-hiring-freeze/index.html); Lena Sun, "Nearly 700 Vacancies at CDC Because of Trump's Hiring Freeze," May 19, 2017 (available at https://www.washingtonpost.com/news/to-your-health /wp/2017/05/19/nearly-700-vacancies-at-cdc-because-of-trump-administration-hiring-freeze/?utm_term=.f7b19c738148).

In sum, Sierra Club has the ability to digest and disseminate information gleaned from FOIA requests to the general public, and will make any newsworthy information or documents received in response to this request publicly available.

*(iv)   The information will contribute "significantly" to public understanding of government operations or activities.*

The information Sierra Club seeks will contribute significantly to public understanding of EPA's operations and activities. The public has, to date, no meaningful information as to the nature of Ms. Bodine and Mr. Dourson's role at EPA during the period prior to their nomination. The "level of public understanding prior to the disclosure" sought here is, consequently, near zero. 40 U.S.C. § 2.107(l)(2)(iv). The information sought by the request will illuminate the manner in which the Agency understands its obligations to respect the Senate's constitutional power of advice and consent. The requested disclosure will, consequently, "be enhanced by the disclosure to a significant extent." 40 U.S.C. § 2.107(l)(2)(iv).

2.  *The Sierra Club Has No Commercial Interest in Disclosure*

Sierra Club is a non-profit organization with no commercial, trade, or profit interests in the requested information.  We seek to use this information solely to inform the public and to ensure government accountability, as well as to enhance public understanding of EPA's operations, and its fulfillment of its mission to protect public health and the environment. Sierra Club has no relevant commercial interest, and the request is entirely in the public interest.

For all of the foregoing reasons, a fee waiver is warranted here under 5 U.S.C. § 552(a)(4)(A)(iii) and 40 CFR § 2.107(l).  If EPA does not believe that the above information is sufficient to justify a fee waiver, please contact us for further documentation before deciding upon the waiver request.

---

of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii); *see also Elec. Privacy Info. Ctr. v. Dep't of Def.*, 241 F. Supp. 2d 5, 6, 11-15 (D.D.C. 2003) (a "non-profit public interest organization" qualifies as a representative of the news media under FOIA where it publishes books and newsletters on issues of current interest to the public).

2101 Webster Street, Ste. 1300 Oakland, CA  94612   TEL: (415) 977-5709

E.   *Conclusion*.

Thank you for your assistance in processing this request.  Please contact me at the email or telephone number below if you have any questions or concerns about this request for information.

Sincerely,

Sanjay Narayan
Sierra Club Environmental Law Program
2101 Webster St., Ste. 1300
Oakland CA 94612
(415) 977-5769
sanjay.narayan@sierraclub.org



Exhibit B

Exhibit B



October 31, 2017

*Submitted via FOIA Online*

National Freedom of Information Officer
Environmental Protection Agency
1200 Pennsylvania Avenue, NW (2822T)
Washington, DC 20460

Dear FOIA Officer:

    This is a request for information on behalf of Sierra Club, pursuant to the
Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the U.S. Environmental
Protection Agency's ("EPA") implementing regulations, 40 C.F.R. §§2.100-2.406.
Sierra Club also requests a fee waiver for this request under 5 U.S.C.
§ 552(a)(4)(A)(iii) and 40 C.F.R. § 2.107(l)(2).

*A. Records Requested*

    Ms. Susan Parker Bodine has been nominated, but not confirmed, to be an
Assistant Administrator at EPA. Mr. Michael Dourson has also been nominated,
but not confirmed, to be an Assistant Administrator at EPA. Sierra Club
requests copies of the following agency records:

1.  All communications  from Ms. Susan Parker Bodine, prior to Ms. Bodine's
    formal confirmation (if any) by the United States Senate;
2.  All communications from Mr. Michael Dourson, prior to Mr. Dourson's formal
    confirmation (if any) by the United States Senate;
3.  All communications to Ms. Susan Parker Bodine, from any staff or personnel
    assigned to EPA's Office of Enforcement and Compliance Assurance, EPA's
    Office of the Administrator, EPA's Office of Intergovernmental Affairs, and
    EPA's Office of General Counsel.

4. All communications to Mr. Michael Dourson, from any staff or personnel
   assigned to EPA's Office of Chemical Safety and Pollution Prevention, EPA's
   Office of the Administrator, EPA's Office of Intergovernmental Affairs, and
   EPA's Office of General Counsel.This request seeks records generated, sent,
   or received after January 15, 2017 up through and including the date of the
   agency's search for records.

For purposes of this request, the term "records" means information of any kind,
including, but not limited to, documents (handwritten, typed, electronic or
otherwise produced, reproduced, or stored), letters, e-mails, facsimiles, memoranda,
correspondence, notes, databases, drawings, graphs, charts, photographs, minutes
of meetings, electronic and magnetic recordings of meetings, and any other
compilation of data from which information can be obtained. As used herein, "and"
and "or" shall be construed either conjunctively or disjunctively as required by the
context to bring within the scope of these requests any information which might be
deemed outside their scope by any other construction.

Further, for purposes of this request, the term "records" includes any personal
email messages, telephone voice mails or text messages, and internet "chat" or
social media messages, to the full extent that any such messages fall within the
definition of "agency records" subject to FOIA, 5 U.S.C. § 552, and including any
attachments. Per EPA records management policy, electronic messages such as text
messages are agency records, which must be preserved and made accessible under
the Freedom of Information Act. As such, a satisfactory search for responsive
records includes a search for records created by the individuals listed above using
any of the following services: Google Chat, Skype for Business, IBM Sametime,
Novell Groupwise Messenger, Facebook Messaging, iMessage; Short Message
Service and Multimedia Messaging Service on devices, such as Blackberry,
Windows, Apple or Android devices; Google Voice, Twitter Direct Message, Slack,
Snapchat, WhatsApp, Pigeon, Yammer, Jive, or, other internal collaboration
networks.

It is my understanding that in previous administrations Agency employees
referred to principals by their initials, acronyms, nicknames, pseudonyms, or
aliases. For example, President Clinton was sometimes referred to as "WJC" and
President Barack Obama was referred to as "BO." In 2013, it was reported that
former EPA Administrator Lisa Jackson used the alias "Richard Windsor" to
conduct official agency business. Therefore, a thorough search for records
responsive to this request includes searching for records containing the acronyms,
nicknames, pseudonyms, or aliases used to identify Ms. Bodine or Mr. Dourson.

*B. Claims of Exemption from Disclosure*

If EPA regards any documents as exempt from required disclosure under the Freedom of Information Act, please identify each allegedly exempt record in writing, provide a brief description of that record, and explain the agency's justification for withholding it. This explanation should take the form of a *Vaughn* index, as described in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), and other related cases. If a document contains both exempt and non-exempt information, please provide those portions of the document that are not exempted from disclosure.

*C. Request for Expedited Processing*

We request that the EPA give this request the benefit of expedited processing. Sierra Club is primarily engaged in disseminating information and educating the public on policy issues of general interest, and the records will be publicly distributed upon their release. This request is urgently needed to inform the public of actual or alleged government activity; Ms. Bodine's and Mr. Dourson's appointments are currently under consideration in the United States' Senate, and the nature of their activities prior to their appointment are of critical, and immediate, public interest. *See, e.g,.* Andrew Restuccia and Nahal Toosi, "Trump Nominees Show Up for Work Without Waiting for Senate Approval," Politico, October 20, 2017 (available at http://www.politico.com/story/2017/10/20/trump-nominees-working-senate-approval-243972).

*D. Request for Waiver of Fees*

Pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 40 C.F.R. § 2.107(l)(2), Sierra Club requests that EPA waive all fees associated with responding to this request. Sierra Club seeks this information in the public interest and will not benefit commercially from this request. FOIA provides that fees shall be waived "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii); 40 C.F.R. § 2.107(l)(2). This request meets both prongs of that standard, as set forth below.

1. *The Request Will Contribute Significantly to Public Understanding of the Department's Operations and Activities.*

EPA's regulations enumerate four factors by which to determine whether a request will contribute significantly to public understanding, so as to require a waiver of fees under FOIA:

(1) The subject of the request: Whether the subject of the requested records concerns "the operations or activities of the government";

(2) The informative value of the information to be disclosed: Whether the disclosure is "likely to contribute 'significantly'" to public understanding of government operations or activities;

(3) The contribution to an understanding of the subject by the general public likely to result from disclosure: Whether the disclosure is likely to contribute to public understanding of government operations or activities.

(4) The significance of the contribution to public understanding: Whether the disclosure is likely to contribute "significantly" to public understanding of government operations or activities.

40 C.F.R. § 2.107(l)(2)(i)-(iv). As set forth below, each of those factors indicates that this request qualifies for a waiver of fees under FOIA.

    *(i)    The request concerns identifiable operations or activities of the government.*

Sierra Club seeks information related to EPA's operations and activities—specifically, the role of pending nominees at the Agency. The request is, moreover, directed towards a specific government action—the role of specific individuals at the agency—over a defined time period. 40 C.F.R. § 2.107(l)(2)(i) (request must "concern identifiable operations or activities of the Federal government"). And it addresses specific subject matter and topics: communications to, and from, unconfirmed nominees to the Agency.

    *(ii)    The disclosure is "likely to contribute" to an understanding of government operations and activities.*

The requested records are "meaningfully informative about government operations," and thus likely to contribute to an understanding of government operations and activities. 40 C.F.R. § 2.107(l)(2)(i). The role of appointees at federal agencies, prior to their confirmation by the Senate, is a matter of long-standing, and critical, public interest. As the Senate has noted, under the Constitution "[t]he President may choose whom he wants to nominate, but the Senate has the power to advise and consent before those nominees may assume office." S. Rep. 105-250 (July 15, 1998). Concern over the role of non-confirmed appointees dates to the founding of the nation; "the 'manipulation of official appointments' had long been one of the American revolutionary generation's greatest griveances." *Id.* (quoting *Freytag v. Commissioner of Internal Revenue,* 501 U.S. 868, 883 (1991) (citations omitted in

original)). And such concern has persisted to the present day; in 1998, Congress amended the Vacancies Act, out of a direct concern that appointees may exercise authority prior to their confirmation, thereby eviscerating the Senate's constitutional role. *Id. See SW General, Inc. v. N.L.R.B.,* 796 F.3d 67, 71-72 (D.C. Cir. 2015). The role of Ms. Bodine and Mr. Dourson—unconfirmed nominees—at the agency is critical to public understanding of the Administration's understanding of the relationship between the President and the Senate in appointing agency officers. In addition, significant concerns have been raised during Mr. Dourson's confirmation hearings regarding potential conflicts of interest. Sheila Kaplan & Eric Lipton, "Chemical Industry Ally Faces Critics in Bid for Top E.P.A. Post, N.Y. Times (Sept. 17, 2017) at A16 (noting statement by Senator Carper that "[t]his is the first time anyone with such clear and extensive ties to the chemical industry has been picked to regulate that industry," and that Mr. Dourson has only described an intent to avoid matters on which he has represented industry after confirmation). Those concerns further emphasize the educational and informative value of the requested records.

(iii)   *The information will contribute to the understanding of a reasonably broad audience of persons interested in the subject.*

This information will contribute to the understanding of a reasonably broad audience of persons interested in the subject. Sierra Club has both "expertise in the subject area," as well as the "ability and intention to effectively convey" the requested information to the public. 40 C.F.R. § 2.107(l)(2)(iii). Sierra Club is the nation's oldest and largest grassroots environmental organization. As such, Sierra Club has long history of providing the public with information as to the role and qualifications of EPA nominees.   In addition, Sierra Club has the ability and intention to convey the information sought by this request to interested members of the public. Sierra Club can publicize information received from this request in monthly electronic newsletters, through social media, and email action alerts, which together reach hundreds of thousands of members, supporters, and subscribers. And Sierra Club reaches a very broad audience. The organization has more than 3 million members and supporters nationwide, who are reached via mail, our website, emails and listservs, and public meetings and events. The Sierra Club website, which hosts a number of blogs as well as online content of the Sierra Magazine, receives more than 26 million unique visits and 30 million page views annually. Sierra Magazine publishes on a range of environmental issues, including climate and energy. For instance, Sierra recently published a story urging oil refineries and other chemical companies to prepare for severe floods related to climate change. Heather Smith, *Planning for the 100-Year Flood Applies to You Too, Chemical Company*, Sierra (Aug. 31, 2017), http://www.sierraclub.org/sierra/planning-for-100-year-flood-applies-you-too-chemical-company. In another example, Sierra reported on coal ash dumps and the health hazards of coal ash based in part on information gathered under FOIA. Paul Rauber, *Solving the Climate Puzzle: One Piece at a*

*Time*, Sierra (Nov./Dec. 2009), http://vault.sierraclub.org/sierra/200911/climate .aspx. In addition, Sierra has been awarded multiple Maggie awards from the western Publications Association, and has been recognized repeatedly for excellence in design by *Folio* magazine's Ozzie Awards.[1]  Sierra Club's communications staff can also disseminate newsworthy information obtained from this request to the media. *See, e.g.,* Rene Marsh & Gregory Wallace, "More than 350 Jobs at EPA Unfulfilled During Trump Hiring Freeze, April 13, 2017 (available at http://www.cnn.com/2017/04/13/politics/epa-hiring-freeze/index.html); Lena Sun, "Nearly 700 Vacancies at CDC Because of Trump's Hiring Freeze," May 19, 2017 (available at https://www.washingtonpost.com/news/to-your-health/wp/2017/05/19/nearly-700-vacancies-at-cdc-because-of-trump-administration-hiring-freeze/?utm_term=.f7b19c738148).

In sum, Sierra Club has the ability to digest and disseminate information gleaned from FOIA requests to the general public, and will make any newsworthy information or documents received in response to this request publicly available.

(iv)     *The information will contribute "significantly" to public understanding of government operations or activities.*

The information Sierra Club seeks will contribute significantly to public understanding of EPA's operations and activities. The public has, to date, no meaningful information as to the nature of Ms. Bodine and Mr. Dourson's role at EPA during the period prior to their nomination. The "level of public understanding prior to the disclosure" sought here is, consequently, near zero. 40 U.S.C. § 2.107(l)(2)(iv). The information sought by the request will illuminate the roles of unconfirmed nominees, and the manner in which the Agency understands its obligations to respect the Senate's constitutional power of advice and consent. The requested disclosure will, consequently, "be enhanced by the disclosure to a significant extent." 40 U.S.C. § 2.107(l)(2)(iv).

---

[1] With the award-winning Sierra magazine and our extensive use of blogs to communicate with the public, Sierra Club would at a minimum be eligible for a fee waiver as a media requestor. 5 U.S.C. § 552(a)(4)(A)(ii); 40 C.F.R. § 2.107(c)(1)(iii); *see also* 40 C.F.R. § 2.107(b)(6) (defining "[r]epresentative of the news media"). A representative of the news media is "any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii); *see also Elec. Privacy Info. Ctr. v. Dep't of Def.*, 241 F. Supp. 2d 5, 6, 11-15 (D.D.C. 2003) (a "non-profit public interest organization" qualifies as a representative of the news media under FOIA where it publishes books and newsletters on issues of current interest to the public).

2101 Webster Street, Ste. 1300 Oakland, CA  94612   TEL: (415) 977-5709

*2.  The Sierra Club Has No Commercial Interest in Disclosure*

    Sierra Club is a non-profit organization with no commercial, trade, or profit interests in the requested information.  We seek to use this information solely to inform the public and to ensure government accountability, as well as to enhance public understanding of EPA's operations, and its fulfillment of its mission to protect public health and the environment. Sierra Club has no relevant commercial interest, and the request is entirely in the public interest.

    For all of the foregoing reasons, a fee waiver is warranted here under 5 U.S.C. § 552(a)(4)(A)(iii) and 40 CFR § 2.107(l).  If EPA does not believe that the above information is sufficient to justify a fee waiver, please contact us for further documentation before deciding upon the waiver request.

    E.   *Conclusion.*

    Thank you for your assistance in processing this request.  Please contact me at the email or telephone number below if you have any questions or concerns about this request for information.

Sincerely,

Sanjay Narayan
Sierra Club Environmental Law Program
2101 Webster St., Ste. 1300
Oakland, CA 94612
(415) 977-5769
sanjay.narayan@sierraclub.org